United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEN TU, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>DONGBU INSURANCE COMPANY, LIMITED,<br><br>        Defendant. | Case No. 17-cv-03495-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; DEFENDANT'S EVIDENTIARY OBJECTIONS AND MOTION TO STRIKE**<br><br>Re: Dkt. No. 20; 29-1 |

Plaintiff Ken Tu brings this action for breach of contract and insurance bad faith against Defendant Dongbu Insurance Company, Ltd. (U.S. Branch) ("Dongbu") arising out of Dongbu's denial of insurance coverage stemming from a sewer line failure that damaged Tu's restaurant and forced it to close.[1] Dongbu's motion for summary judgment or, in the alternative, partial summary judgment is now pending before the Court, (Dkt. No. 20), along with Dongbu's Evidentiary Objections and Motion to Strike, (Dkt. No. 29-1).[2] After considering the parties' briefs, and having had the benefit of oral argument on August 30, 2018, the Court GRANTS Dongbu's motion for summary judgment and DENIES Dongbu's motion to strike. Plaintiff has failed to show that there is any coverage for his claimed losses under the plain language of the insurance contract.

**BACKGROUND**

**I.    Factual Background**

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 6 & 8.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

In November 2014, Plaintiff and Sonnie Tu purchased "as is" Abby's Grill & Restaurant ("Abby's Grill"), located at 2320 San Pablo Ave, Pinole, California, 94564, from Ernaby Ytell and her husband (together, "Ytell") for $50,000. (Dkt. No. 20-1, Ex. C at 63-64.) The terms of the purchase agreement provided that the transaction would be completed in December 2014. (*Id*.) The purchase price included interior fixtures and some restaurant equipment. (*Id*.)

Ytell did not own the premises at 2320 San Pablo Ave, but was instead a commercial lessee of the property. (Dkt. No. 20-1, Ex. C at 52-55.) On February 1, 2015, the lessor of the premises added Plaintiff, Sonnie Tu, and Eric Tu to the commercial lease by way of an addendum. (Dkt. No. 20-2, Ex. K at 156.) Ytell remained on the lease. (*Id*.) Plaintiff renamed the restaurant Phonomenal and opened for business shortly thereafter. (Dkt. No. 20-1 at 76.)

In May 2016, Plaintiff and other tenants of the building housing the restaurant noticed a "sewer odor" emanating from under the building. (Dkt. No. 20-2, Ex. H at 96.) On May 20, 2016, health inspectors inspected the building and ordered it repaired immediately. (*Id*.) The building manager hired demolition and plumbing contractors who subsequently discovered the faulty sewer line under the restaurant and performed necessary repairs from May 23 through May 27, 2016. (*Id*. at 103-04.) The record does not suggest that Plaintiff reopened Phonomenal following the repairs, and Plaintiff was evicted from the premises on or around August or September 2016. (*See* Dkt. Nos. 20-1, Ex. A at 4-6, 15-16; Ex. B at 33.)

### A. Insurance Policy

Dongbu initially issued Plaintiff an insurance policy ("Policy") effective February 13, 2015 to February 13, 2016. (Dkt. No. 1, Ex. A at 13.) Plaintiff renewed the Policy in 2016, extending coverage until February 13, 2017. (Dkt. Nos. 20-2, Ex. F at 9 & 20-3 at ¶ 2.) The "Location Coverage Summary" of the Policy lists Plaintiff's restaurant as the premises covered. (Dkt. No. 20-2, Ex. F at 12.)

### B. Claims Under the Policy

#### 1. Property Loss

After discovery of the faulty sewer line on May 23, 2016, Plaintiff submitted a "Property Loss Notice" to Dongbu's third-party claims administrator ("York") on May 27, 2016, stating that:

> Plumbing went bad forcing store to close. Will be closed for 2 weeks. Looking to claim damage to equipment and los[s] of business.

(Dkt. No. 20-2, Ex. G at 93.) York assigned a field adjuster six days later "to inspect the premises and investigate the cause of the loss." (Dkt. No. 20-2, Keithley Decl. at ¶ 5.) On June 5, 2016, the field adjuster inspected the premises, accompanied by Plaintiff and the building manager. (*Id*. at ¶ 7.) In describing the cause of loss, the field adjuster's June 28, 2016 report states, in relevant part:

> The building Drain Line broke under the kitchen area. The failed section of sewer line was located under the grease trap of the kitchen.

(Dkt. No. 20-2, Ex. I at 106.) The report states that the "[f]ailed section of drain line was installed by the previous restaurant owner 7 years ago." (*Id*.) The field adjuster "inspected all related damages and summarized [Plaintiff's] claim" as $1,797.82 for "Perishable Food Loss" and "Business Income Loss" for an amount to be determined. (*Id*. at 107.) According to the report, Plaintiff "requested an Advance Payment to offset the loss of income and perishable food loss." (*Id*.) The field adjuster recommended an advance on the business income claim in the amount of $7,500, based on an "[a]verage monthly revenue [of] approx[imately] $25,000.00." (*Id*. at 109.)

In a letter dated August 10, 2016, York informed Plaintiff that his policy did not provide coverage for repairs "in regards to the sewer pipe and flooring" because: (i) he was not covered for damage to "Buildings," and (ii) the sewer pipe and flooring were not part of his "Business Personal Property" given that they "were installed by a previous tenant." (Dkt. No. 20-2, Ex. L at 159.) York sent Plaintiff a "closure letter" on September 20, 2016, notifying him that payment had been issued to him for "Spoilage" in the amount of $797.82 (representing the field adjuster's recommendation minus Plaintiff's $1,000 deductible). (Dkt. No. 20-2, Ex. N at 165.) The letter also noted that "based upon the executed Proof of Loss, payment in the amount of $11,804.00 has been requested under the Business Income coverage," and a check would "be issued under separate cover." (*Id*.) The letter stated that the issuance of payment for Spoilage and Business Income did not "change, modify or alter the partial Coverage Denial, dated 8/10/2016, pertaining to the sewer pipe and flooring." (*Id*.) According to York, the issuance of payment did, however, "conclude[ ] the settlement of [the] claim." (*Id*.)

3

### 2. Liability

Plaintiff's landlord, Scott Heun ("Heun") filed a liability claim with Dongbu against Plaintiff on June 4, 2016. (Dkt. No. 20-2, Ex. H at 96-97; Dkt. No. 20-3 at ¶ 3; Ex. O at 5-7.) The field adjuster's June 28, 2016 report also notes that Plaintiff "opened a 1st party and 3rd party" liability claim. (*See* Dkt. No. 20-2, Ex. I at 106) (noting that the "Dongbu Liability adjuster has been to the site and a determination has not been made as to coverage under the Liability Claim.")

York denied Mr. Heun's liability claim by letter dated July 8, 2016. The declination letter states, in pertinent part:

> We have completed our investigation of the [claim] and have determined that Ken Tu DBA: Phonomenal is neither responsible nor liable for the damage to your building located at 2320 San Pablo Ave in Pinole, CA resulting from a broken plumbing line occurring on or about [May 23, 2016]. The plumbing was installed in your building prior to Phonomenal leasing the building. Therefore, any faulty installation of plumbing lines was pre-existing.

(Dkt. No. 20-3 at 10.) York notified Plaintiff of its denial of liability coverage by letter that same day, stating, in part:

> [W]e have denied liability for the damage to Mr. Heun's building caused by a broken plumbing line on [May 23, 2016]. At this time, I am closing the liability claim which was opened under you[r] policy. A property damage claim is still open for any of your property which may be covered under your policy regardless of liability.

(*Id*. at 9.) As detailed in Section C.2 below, Plaintiff filed another liability claim with Dongbu on March 27, 2017, seeking a defense against a cross-complaint filed by Ytell in the underlying negligence action brought by Plaintiff in state court. (*See* Dkt. No. 20-3, Ex. Q at 12.) Dongbu disclaimed coverage for that claim.

### C. Other Litigation

#### 1. Unlawful Detainer Action

On August 16, 2016, Mr. Heun issued a Three-Day Notice to Plaintiff and Ytell notifying them that they were in violation of the lease by: (i) failing to pay rent for June, July, and August 2016; (ii) "[f]ailure to maintain and repair Premises, including plumbing"; (iii) failure to reimburse the landlord for emergency repairs in the amount of $21,844.98; and (iv) failure to maintain minimum insurance. (Dkt. No. 20-1, Ex. A at 15-16.) Two weeks later, Mr. Heun filed an

unlawful-detainer action against Plaintiff and Ytell. (*Id*. at 4-6.) In April 2017, Mr. Heun dismissed Plaintiff from the action, (Dkt. No. 20-1, Ex. E at 75-76), pursuant to a Full Release and Settlement Agreement, (Dkt. No. 20-4, Ex. U at 7-10). Mr. Heun pursued the matter against Ytell, however, and in October 2017 the court issued a default judgment against Ytell in the amount of $12,986.37, comprising of $6,855.00 in past-due rent, $4,360.50 in holdover damages, $1,187.37 in attorneys' fees, and $553.50 in costs. (Dkt. No. 20-1, Ex. D at 72-73.)

### 2. Negligence Action and Cross-Complaint

Plaintiff sued Ytell in state court on December 30, 2016, seeking compensatory damages for "wage loss," "loss of use of property," "general damage," and "loss of earning capacity" based on the closure of Phonomenal. (Dkt. No. 20-1, Ex. B at 30-33.) Plaintiff's complaint alleges, in pertinent part:

> The loss of Plaintiff's business is attributed to the negligent plumbing installation by the defendants and defendant's negligence in failure to promptly fix the plumbing.

(*Id*. at 33.) Ytell filed a cross-complaint against Plaintiff on March 10, 2017, bringing causes of action for breach of contract, breach of the covenant of good faith and fair dealing, negligence, reimbursement, indemnification, and declaratory relief. (Dkt. No. 20-1, Ex. C at 35-50.) Ytell's cross-complaint includes exhibits indicating that Abby's Grill underwent a permitted "underfloor" plumbing renovation that was completed sometime in 2011 and inspected in June 2011. (*See id*. at 57-59.)

On March 27, 2017, Plaintiff notified Dongbu of Ytell's cross-complaint and requested liability coverage in defense of the matter. (Dkt. No. 20-3, Ex. Q at 12.) Dongbu responded with a Disclaimer of Coverage on May 16, 2017, declining to defend Plaintiff in the action because Ytell's claims against Plaintiff "[did] not present a potential for coverage under the Dongbu policy." (Dkt. No. 20-3, Ex. R at 50.)

## II. Procedural Background

On May 12, 2017, Plaintiff, joined by Sonnie and Eric Tu, filed an action against Dongbu in the Superior Court of the State of California for the County of Contra Costa for breach of contract and "bad faith denial of insurance benefits" stemming from the sewer line failure and

1  related litigation discussed above. (Dkt. No. 1 at 7-9.) Plaintiff's complaint seeks monetary
2  damages, attorney's fees, and punitive damages. (*Id*. at 8.) On June 16, 2017, Dongbu removed
3  the action to this Court based upon diversity jurisdiction, pursuant to 28 U.S.C. § 1446. (Dkt. No.
4  1.)

5  Dongbu moved to dismiss Sonnie and Eric Tu. (Dkt. No. 5.) The Court granted Dongbu's
6  motion, finding that neither individual was a party to the insurance policy. (Dkt. No. 9.) On April
7  30, 2018, Dongbu filed the instant motion for summary judgment or, in the alternative, partial
8  summary judgment. (Dkt. No. 20.) Under the Civil Local Rules, Plaintiff's opposition was due
9  on May 14, 2018. No opposition was filed by that deadline; instead, 10 days after the deadline
10 Plaintiff moved ex parte for an extension of time. (Dkt. No. 24.) The Court granted Plaintiff an
11 extension over Dongbu's objection. (Dkt. Nos. 24, 25, 26.)

**PRELIMINARY ISSUES**

**I.  Defendant's Evidentiary Objections and Motion to Strike**

Dongbu filed evidentiary objections and a motion to strike Plaintiff's declaration in support of Plaintiff's opposition, but did so outside of its reply brief. (Dkt. No. 29-1.) This separate filing violates Civil Local Rule 7-3(c), which requires "[a]ny evidentiary and procedural objections to the opposition be contained within the [reply] brief or memorandum." Civ. L.R. 7-3(c). The reply brief "may not exceed 15 pages of text." *Id*. Here, Dongbu attempted to evade the 15 page limit by filing a motion to strike instead of voicing its evidentiary objections in its reply brief as required under the Local Rules. The Court therefore DENIES Dongbu's motion to strike, "and will only address the evidentiary arguments to the extent they are raised" in Dongbu's reply brief. *See Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1119 (N.D. Cal. 2011) (denying defendant's separately-filed motion to strike based on a similar violation of Local Rule 7-3(c)).

**II. Defendant's Request for Judicial Notice**

Dongbu requests judicial notice of (1) the unlawful detainer action filed in August 2016 by Scott Heun against Ken Tu, Ernaby Ytell, and other tenants, in Contra Costa County Superior Court, Case No. RS16-0728, with attached exhibits; (2) the judgment entered in October 2016 in

1  favor of plaintiff Scott Heun in that action; (3) the request for dismissal and dismissal entered in
2  that action in April 2017 as to defendants Eric Tu, Ken Tu, Sunny [sic] Tu, and Tommy Tu; (4)
3  the complaint filed in December 2016 by Ken Tu and others against Ernaby Ytell and Rolando
4  Odiamar in Contra Costa County Superior Court, Case No. C16-02484; and (5) the cross-
5  complaint filed in March 2017 by Ernaby Ytell against Ken Tu and others in Contra Costa County
6  Superior Court, Case No. C16-02484, with attached exhibits. (Dkt. No. 20-1.)

A judicially noticed adjudicative fact must be one "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. A court may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue." *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (internal quotation marks and citation omitted). Here, the state court records Dongbu seeks to have judicially noticed stem from the same nucleus of facts as the instant action and are directly related to Plaintiff's assertion that Dongbu breached the insurance policy by disclaiming business liability coverage. Accordingly, the Court GRANTS Dongbu's request for judicial notice.

**DISCUSSION**

Plaintiff contends that Dongbu breached the insurance contract by failing to pay for repairs to the sewer, the sub-floor and the floor and failing to defend him in the unlawful detainer action and against Ytell's cross-complaint. California law applies to this diversity action. *See Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008) (applying California law to interpret insurance policy). Under California law, Plaintiff, as the insured, "has the burden of establishing that a claim , . . . is within basic coverage, while the insurer has the burden of establishing that a specific exclusion applies." *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 322 (2010).

Dongbu moves for summary judgment on the grounds that Plaintiff cannot meet his burden of showing that the Policy covers his claims. *See Nissan Fire & Marine Ins. Co., Ltd v. Fritz Co., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (holding that a defendant moving for summary judgment

bears the burden of either producing evidence negating an essential element of each claim on which it seeks judgment, or showing that the nonmoving party cannot produce evidence sufficient to satisfy its burden of proof at trial.). In the alternative, Dongbu argues that to the extent Plaintiff meets his burden of showing there is a genuine dispute as to whether the Policy covers a claim, the claim is specifically excluded from the Policy.

## I. The Property Claims

Dongbu insists that Plaintiff cannot show that the Policy covers repairs to the sewer, the sub-floor and the floors. Dongbu notes that under Section 1 of the "Businessowners [sic] Coverage Form," the Policy defines the scope of "Covered Property":

> A. Coverage
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> 1. Covered Property
>
> Covered Property includes Buildings as described under Paragraph a. below, Business Personal Property as described under Paragraph b. below, or both, *depending on whether a Limit of Insurance is shown in the Declarations for that type of property*.

(Dkt. No. 20-2, Ex. F at 14) (emphasis added.) Thus, for buildings to be included as covered property under the Policy, the "Declarations" must provide a "Limit of Insurance." (*Id*.) The Policy Declarations section includes a "Location Coverage Summary." (*Id*. at 12.) The location coverage summary specifies "the Limits of Insurance and any Optional Coverage" for Plaintiff's restaurant. (*Id*.) The summary includes a line item for "Buildings," but the line item does not specify a monetary "Limit." (*Id*.) Conversely, the summary includes line items for "Business Personal Property" with a limit of $100,000.00, and "Business Income" and "Extra Expense" limited to the "Actual Loss Sustained." (*Id.*) By the Policy's unambiguous terms, therefore, buildings are not covered property because there is no specified Limits of Insurance.[3] Defendant

---

[3] The August 10, 2016 letter from York to Plaintiff provides the same justification, stating, in pertinent part: "We reviewed the [Policy Declarations] and there is not a limit of Insurance shown under Buildings. Accordingly, there is no coverage in regards to the sewer pipe and flooring under the Building coverage." (*See* Dkt. No. 20-2 at 159.)

8

thus argues that there is no coverage because the Policy does not cover buildings.

Plaintiff's opposition does not dispute that there is no coverage for buildings; instead, it identifies a number of other provisions that he contends provide coverage.[4] (Dkt. No. 27 at 6-8.) Each is addressed below.

### A. Business Personal Property

At the very end of his opposition, Plaintiff states the following:

> The "Business Personal Property" coverage on the declaration page, BO0003 p.4 (defendants' exhibit F8), extends coverage for the lost personal property. See Ken Tu declaration.

(Dkt. No. 27 at 10.) No other argument or explanation is provided. The Court has nonetheless reviewed the coverage for Business Personal Property and concludes that Plaintiff has not met his burden of showing that it applies.

Section 1 defines "Business Personal Property" as property "located in or on the buildings at the described premises," including, as relevant here:

> Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:
>
> (a) Made a part of the building or structure you occupy but do not own; and
>
> (b) You acquired or made at your expense but cannot legally remove[.]

(*Id*. at 14.) Plaintiff does not identify any evidence that suggests he acquired or made at his expense the sewer, sub-floor or floor. His declaration—the only evidence he identifies in support of this argument—does not include any evidence that would permit a trier of fact to make such a finding. (Dkt. No. 27-1.) For this reason alone, Plaintiff has not met his burden of showing that the sewer, sub-floor or floor was covered Business Personal Property. *See Keenan v. Allan*, 91

---

[4] Plaintiff also appears to challenge the validity of the contract itself, stating that the contract is ambiguous and convoluted, and that "Defendants fail to disclose the date of execution of the contract vs. the date of providing the policy changes and endorsements, which is a fatal defect to their motion." (Dkt. No. 27 at 3.) Plaintiff's opposition briefing does not develop this argument, however, and instead challenges specific provisions that Plaintiff asserts provide coverage under the Policy. (*Id*. at 3-10.) Because the gravamen of Plaintiff's argument is that Dongbu wrongly withheld benefits due under specific provisions of the Policy, the Court will address those provisions and conduct its analysis accordingly.

9

F.3d 1275, 1279 (9th Cir. 1996) ("[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."); Fed. R. Civ. P. 56(a)(3) (on summary judgment "[t]he court need consider only the cited materials").

Nonetheless, the Court has reviewed the entire summary judgment record, *see* Fed. R. Civ. P. 56(a)(10) (on summary judgment the court *may* consider uncited materials in the record), and concludes that it does not include admissible evidence sufficient to support a finding that the sewer, sub-floor or floor qualifies as Plaintiff's Business Personal Property under the Policy's plain language. Plaintiff does not contend that he installed the sewer line or subfloor; instead, Plaintiff maintains—in this action and in the underlying state action—that third-party Ytell installed both the sewer line and subfloor prior to Plaintiff's purchase of the restaurant. Thus, neither the sewer line nor the subfloor constitutes Business Personal Property under the Policy as they were not acquired by Plaintiff nor made a part of the building at his expense.

As for the floor, the record includes evidence that Plaintiff reported to the York site inspector "that the work on the sewer line was authorized by the previous tenant, and that the flooring was also installed by the previous tenant." (Dkt. No. 20-2 at 159) (*see also id*. at 108) (York inspector's "Action Plan" in the June 28, 2016 report stating, in part: "Verify no improvements to be included with the building repairs (tiled floor installed by previous tenant. The floor was [demolished] by the building owner).") While Plaintiff's statement would be non-hearsay as a statement of a party opponent, *see* Fed. R. Civ. 801(d)(2), and thus admissible as substantive evidence that Plaintiff did not pay for the floor, the York inspector's assertion in his report is hearsay; Dongbu would have to submit a declaration from the inspector regarding what Plaintiff told him for Plaintiff's statement to be admissible. The record also includes an email from Plaintiff to York's liability claims adjuster in which Plaintiff states that prior to opening Phonomenal, Plaintiff painted the restaurant and renovated the floors "from wood to tile." (Dkt. No. 20-3 at 6.) Plaintiff's statement, however, is hearsay not subject to any exception and thus cannot be considered for the truth of the matter asserted, that is, that he renovated the floors from wood to tile. *See* Fed. R. Evid. 802.

10

As neither of these statements is admissible, the admissible evidence in the record is silent as to whether the floor was acquired or made at Plaintiff's expense. *See Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002) (holding that a trial court can only consider admissible evidence on summary judgment). Accordingly, Plaintiff has not met his burden of submitting admissible evidence sufficient to support a reasonable inference that the floor qualifies as his Business Personal Property. Indeed, Plaintiff does not identify the acquisition of the floor as a genuine dispute defeating summary judgment. (Dkt. No. 27 at 3-4.)

### B. Sewer Back-Up

The Declarations section of the Policy includes a line item covering "Sewer Back-up" with a total limit of $5,000 and a deductible of $1,000. (Dkt. No. 20-2, Ex. F at 12.) Plaintiff argues that this endorsement applies to his claimed losses. The operative provision is found under the Water Back-Up and Sump Overflow endorsement, which provides, in pertinent part:

> We will pay for direct physical loss or damage to ***Covered Property***, covered under Section I – Property, caused by or resulting from:
>
> 1. Water or waterborne material which backs up through or overflows or is otherwise discharged from a sewer or drain; or
>
> 2. Water or waterborne material which overflows or is otherwise discharged from a sump, sump pump or related equipment, even if the overflow or discharge results from mechanical breakdown of a sump pump or its related equipment.

(*Id*. at 71) (emphasis added.) The clear terms of the endorsement restrict its application to "Covered Property." As previously discussed, the Policy does not extend coverage to buildings, and Plaintiff has not identified any other Policy provision that would render the sewer line, subfloor, or floor "Covered Property" under the Policy. Thus, Plaintiff's identification of the "Sewer-Back-up" endorsement does not meet his burden of showing coverage under the Policy.

Even if Plaintiff had shown coverage pursuant to the Sewer-Back-up endorsement, Dongbu has met its burden of showing that an exclusion nonetheless applies. The Water Back-Up and Sump Overflow endorsement contains an exclusion of coverage for damage caused by:

> Water under the ground surface pressing on, or flowing or seeping through:

11

> a. Foundations, walls, floors or paved surfaces;
> b. Basements, whether paved or not; or
> c. Doors, windows or other openings; . . . .

(*Id*. at 72.) On the record before the Court it is undisputed that Plaintiff's claimed damage to the flooring and subflooring of the restaurant occurred because of discharge from a sewer line that was "under the ground surface pressing on, flowing or seeping through" the restaurant's foundation and floor. As a straightforward reading of the Policy excludes coverage for damage caused by subsurface water, even if the floor was Covered Property, the subsurface water exclusion would apply. *See Ruffin Road Venture Lot IV v. Travelers Prop. Cas. Co. of Am.*, No. 10-CV-1-JM (WVG), 2011 WL 2463291, at *3 (S.D. Cal. June 20, 2011) (enforcing similar subsurface water exclusion where policy provided coverage to buildings).

### C. Water Damage, Other Liquids, Powder or Molten Material Damage

The Policy also extends the following coverage:

> If loss or damage caused by or resulting from *covered water* or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from the which the water or other substance escapes.

(Dkt. No. 20-2, Ex. F at 18) (emphasis added.) Plaintiff argues—with no additional commentary—that this provision "also extends coverage." (Dkt. No. 27 at 6.) Dongbu counters that the provision is inapplicable because "buildings and structures are not Covered Property under the Policy." (Dkt. No. 29 at 11.) Further, Dongbu insists that the subsurface water exclusion applies and therefore the damage did not result from "covered water." (*Id*. at 11-12) (citing *Ruffin Road*, 2011 WL 2463291, at *3.) The Court agrees. The Policy's plain language does not extend coverage to buildings, and the subsurface water exclusion otherwise applies to the cause of loss.

### D. Pollutant Clean-Up and Removal

The Policy's Pollutant Clean-Up and Removal provision states, in pertinent part:

> We will pay your expense to extract "pollutants" from your land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period.

(Dkt. No. 20-2, Ex. F at 20-21.) Plaintiff—again, with no additional commentary—insists that the

12

Pollutant Clean-Up and Removal "also extends coverage." (Dkt. No. 27 at 6-7.) Dongbu argues that Plaintiff "proffers no evidence that he incurred any expense to extract pollutants, or that he submitted a claim to Dongbu at any time for the cost to extract 'pollutants.'" (Dkt. No. 29 at 13.) Dongbu argues further that "the localized failure of a sewer line at a business premises" does not constitute a "discharge, dispersal, seepage, release or escape." (*Id*.)

The Court disagrees that a sewer line failure could never fall within the scope of this provision, and finds the cases cited by Dongbu for that proposition easily distinguishable on their facts. *See Mackinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635 (2003) (pollution *exclusion* did not bar coverage for injury related to the intentional release of pesticides); *see also Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1185 (6th Cir. 1999) (pollution *exclusion* did not bar coverage for localized injury caused by intentional use of harmful sealant). However, under the undisputed facts here, the Pollutant Clean-Up provision does not extend coverage because Dongbu has met its burden of proving that the failure of a subsurface sewer line does not constitute a covered cause of loss under the Policy's subsurface water exclusion. And, in any event, there is nothing in the record that suggests Plaintiff incurred any expenses to extract "pollutants," let alone that he made a claim for such an expense.

### E. Fungi, Wet Rot or Dry Rot

The Policy excludes coverage for the "[p]resence, growth, proliferation, spread or any activity of 'fungi' wet rot or dry rot." (Dkt. No. 20-2, Ex. F at 30.) However, the Policy provides an exception to this exclusion stating, in pertinent part:

> But if "fungi," wet rot or dry rot result in a "specified cause of loss" we will pay for the loss or damage caused by that specified cause of loss.

(*Id*.) The Policy's definition of "specified cause of loss" includes "water damage." (*Id*. at 43.) Plaintiff insists that "the fungi coverage applies" because "[w]ater damage is a specified cause of loss." (Dkt. No. 27 at 7.) Dongbu counters that Plaintiff has not demonstrated that his claimed damages were caused by "fungi." The Court agrees. The plain language of the exception applies only to "fungi" that *results* in a specified cause of loss. There is no coverage under this provision as a matter of law because there is no evidence in the record that supports a finding that the

13

damage to the sewer, sub-floor or floor was caused by fungi; indeed, there is no evidence of any fungi whatsoever.

### F. Debris Removal

The Policy provides "Additional Coverage" for debris removal. (*Id*. at 16.) The Debris Removal provision states, in pertinent part:

> Subject to Paragraphs (3) and (4), we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period.

(*Id*.) Defendant argues that there is no coverage under this provision because Plaintiff has submitted no evidence that he: (i) "submitted a claim to Dongbu for debris-removal expense, or" (ii) "that he incurred any expense to remove debris." (Dkt. No. 29 at 15.) Further, Dongbu notes that the provision is limited "to the removal of 'debris of Covered Property' and requires that such debris be caused by a Covered Cause of Loss." Dongbu argues that neither applies.

The plain language of the provision supports Dongbu's position. As explained above, Plaintiff has not met his burden of showing that the sewer line, subfloor, and tile floor are Covered Property under the Policy. Further, as with the pollutant provision, there is no evidence that Plaintiff incurred any expense to remove debris or made a claim for such expense.

### G. Damage to Premises Rented to Insured

The Declarations page for "businessowners liability coverage" includes a line item for "damage to premises rented to you" in the amount of $300,000.00. (*Id*. at 11.) Plaintiff insists that the line item "clearly extends coverage to the premises rented by the insured." (Dkt. No. 27 at 8.) Plaintiff's argument suffers from several fatal flaws.

First, it is the declaration page for liability insurance, that is, coverage for amounts for which Plaintiff becomes liable. Whether Dongbu was required to defend and indemnify Plaintiff for his liability for the faulty sewer and resulting damage is discussed below.

Second, Plaintiff offers no support, legal or otherwise, for his contention that the declarations page creates coverage. If there is coverage for repair to the sewer, sub-floor and floor as property covered by the Policy, Plaintiff must identify a provision in the Policy that creates such coverage. The Declarations page is not such a provision.

14

Third, to the extent the business liability coverage somehow covers the property damage to the sewer, sub-floor, and floor, Dongbu has met its burden of showing that the exclusion for property damage to property rented by the insured applies. The Policy specifically excludes from business liability coverage "property damage" to:

> Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property[.]

(Dkt. No. 20-2, Ex. F at 50.) The only exception to this exclusion is for "property damage" to premises rented by the insured "'for a period of seven or fewer consecutive days.'" (*Id*.) As it is undisputed that Plaintiff rented the premises for more than seven consecutive days, this exception does not apply.

### H. Civil Authority

The Policy extends the following coverage under its Civil Authority provision:

> When a Covered Cause of Loss causes *damage to property other than property at the described premises*, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by the action of civil authority that prohibits access to the described premises . . . .

(Dkt. No. 20-2, Ex. F at 21) (emphasis added.) Plaintiff asserts that the Civil Authority provision applies because "[t]he business closed due to a civil authority in response to a dangerous condition." (Dkt. No. 27 at 9.) The plain language of the provision, however, does not support Plaintiff's position. The Civil Authority provision clearly applies only when a civil authority "prohibits access to the described premises" due to "damage to property other than property at the described premises." For example, the provision would conceivably apply if a covered cause of loss caused damage to the street in front of the restaurant, and a civil authority closed the restaurant because of that damage. Here, the claimed damage from the sewer line failure occurred only to property at the "described premises"—Phonomenal—and Plaintiff presents no evidence showing otherwise. Thus, the Civil Authority provision is inapplicable.

## II. Business Income

The Policy provides the following coverage for loss of business income:

15

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

(Dkt. No. 20-2, Ex. F, at 18-19.) As previously noted, in September 2016 Plaintiff submitted to Dongbu a Sworn Statement in Proof of Loss in the amount of $11,804, (Dkt. No. 20-2, Ex. M at 163), and Dongbu paid Plaintiff that amount, (Dkt. No. 20-2, Ex. N at 165).[5]

Plaintiff acknowledges Dongbu's payment, but argues that Dongbu "only paid a scant sliver of the lost business income[,] . . . leaving unpaid the majority of the lost business income." (Dkt. No. 27 at 8.) Plaintiff's allegations hold no weight, however, given that Plaintiff submitted a signed, sworn statement specifying that the "Actual Loss Sustained" for his "Business Income loss" was "$11,804.00." (*See* Dkt. No. 20-2, Ex. M at 163.) That Plaintiff now disputes the amount paid is insufficient to defeat summary judgment as to claims concerning the Business Income provision where the record is undisputed that Plaintiff claimed $11,804.00 in lost income, and Dongbu paid that exact amount.

## III. Business Liability

Dongbu also argues that it is entitled to summary judgment on Plaintiff's claim, or at least implied claim, that Dongbu breached the Policy by refusing to defend him in the unlawful detainer action and against Ytell's Cross-Complaint. The Policy's Business Liability provision extends the following coverage:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage" or "personal and advertising injury" to which this insurance does not apply.

---

[5] The record is silent as to why Dongbu did not enforce the subsurface water exclusion with respect to the Business Income claim; however, Dongbu does not contest the propriety of its grant of benefits in that regard.

16

(Dkt. No. 20-2, Ex. F at 44.) Dongbu argues that under that this provision it had no duty to defend because neither action alleged covered damages. The Court agrees.

Neither the unlawful detainer action nor Ytell's cross-complaint sought damages for "bodily injury" or "personal and advertising injury." Furthermore, to the extent either suit sought damages for "property damage," the Policy excludes liability coverage for damage to property owned, rented or occupied by the insured unless it is "rented to [the insured] for a period of seven or fewer consecutive days." (*See* Dkt. No. 20-2, Ex. F at 50.) As previously discussed, there is no dispute that Plaintiff rented the premises for more than seven consecutive days. Thus, as a matter of law, Dongbu did not improperly deny coverage for Plaintiff's alleged liabilities to Heun or Ytell.

At oral argument Plaintiff identified another provision he contends creates a duty to defend: a paragraph (f) stating "We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense." (Dkt. No. 20-2 at 37.) This provision, however, does not create a duty to defend. First, it is found under the paragraph (5) "Loss Payment," section: "In the event of loss or damage covered by this policy." (*Id.* at 35.) Plaintiff has not shown that there was any damage or loss covered by the Policy; accordingly, paragraph 5(f) does not apply. Second, by its plain language it gives the insurer the option to defend, not the obligation.

\*\*\*

Dongbu has met its summary judgment burden of showing that Plaintiff cannot satisfy an essential element of his breach of contract claim; specifically, that the Policy covered any of Plaintiff's insurance claims. The Policy's plain language does not extend coverage for damage to the sewer line, subfloor, or floor caused by the sewer line failure or require Dongbu to defend and indemnify Plaintiff in the unlawful detainer action or against Ytell's cross-complaint. Accordingly, Dongbu's motion for summary judgment on Plaintiff's breach of contract claim is granted.

### III. Bad Faith Denial of Insurance Claim

Plaintiff's bad faith intentional tort claim alleges that Dongbu "knowingly and

intentionally denied coverage" that it "was contractually obligated to pay" under the insurance policy. (Dkt. No. 1 at 46.) The "threshold requirement" in a bad faith claim is that insurance coverage exists under the plaintiff's policy. *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1153 (1990) (holding that "a bad faith claim cannot be maintained unless policy benefits are due."). As Plaintiff has not met his burden of showing that the Policy provides coverage for Plaintiff's alleged losses beyond those already paid by Dongbu, Plaintiff's claim for bad faith denial of insurance must fail.

## IV. Alleged Material Facts in Dispute

Plaintiff's opposition brief asserts that summary judgment on his claims is improper because several material facts remain in dispute. The Court addresses each purported material fact in dispute below.

### A. Sewer Line Failure and Third-Party Negligence Exclusion

Plaintiff argues that his pending state law action against third-party Ytell creates a genuine dispute as to a material fact; specifically, whether the insurance policy's third-party negligence exclusion applies because the cause of the sewer line failure is disputed in the state action. However, the Court's conclusion that summary judgment must be granted does not rely on the third-party negligence exclusion; instead, it relies on Plaintiff's failure to meet his burden to show coverage in the first instance.

### B. Parties Insured Under the Policy

Plaintiff argues that a genuine dispute exists as to who is covered under the Policy. Specifically, Plaintiff asserts that the terms of the Policy extend coverage to third party Ytell and the previously-named plaintiffs to this action who were dismissed pursuant to the Court's July 2017 Order granting Dongbu's unopposed motion to dismiss Sonnie and Eric Tu as plaintiffs.[6] The Court sees no reason to revisit its July 2017 Order, and concludes that the previously-named plaintiffs are not parties to the insurance contract with Dongbu. Further, Plaintiff does not explain

---

[6] In dismissing Sonnie and Eric Tu, the Court concluded that because neither "plead that they are parties to the insurance policy, and the policy itself does not identify them as parties or third party beneficiaries, they do not have a contract with Defendant and thus no contract-based claims against it." (Dkt. No. 9 at 1.)

18

how any dispute would be material: if, as the Court has concluded, there is no coverage under the Policy then there is no coverage.

As for Ytell, Plaintiff asserts that she is a party to the insurance contract under Policy provisions that extend coverage to business partners, individuals with a controlling interest in the business, and managers or lessors of the business premises. Plaintiff argues that Ytell qualifies for coverage under these provisions because she remained on the lease for the premises. Putting aside that Plaintiff provides no authority for the proposition that a co-lessee in and of itself constitutes a business partner, he again does not explain how such a dispute, if any, is material, let alone how he has standing to make a claim on behalf of an additional insured. Again, if there is no coverage for the loss under the Policy then there is no coverage regardless of who makes the claim.

## CONCLUSION

Dongbu has met its burden and shown that it is entitled to judgment as a matter of law, and Plaintiff fails to demonstrate a genuine dispute as to any material fact. Accordingly, the Court grants Dongbu's motion for summary judgment, but denies Dongbu's motion to strike because it fails to comply with the Civil Local Rules.

This Order disposes of Docket Nos. 20 & 29-1.

**IT IS SO ORDERED.**

Dated: September 5, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge